**700 MADISON, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 8487.**

United States District Court
N. D. Ohio, W. D.

March 19, 1962.

Ritter, Boesel & Holden, George W. Ritter, Milton Boesel, Sr., Toledo, Ohio, for plaintiff.

Marvin Haiken, Trial Section, Tax Division, Department of Justice, Washington, D. C., for defendant.

KLOEB, District Judge.

This action is brought by the taxpayer corporation to recover the aggregate sum of $26,368.71, on account of Federal income taxes and interest for the fiscal years ending October 31, 1955, through October 31, 1958, which the taxpayer alleges to have been erroneously assessed and collected by the defendant.

Plaintiff alleges that, on December 1, 1954, it purchased a parcel of real estate located at the corner of Erie Street and Madison Avenue in the City of Toledo, Ohio, and known as the "Colton Building", which is a building four stories in height, built in the year 1904, and used for retail stores on the ground floor and offices on the upper three floors; that said building is of brick and wood construction, not fireproofed, and not modernized; that plaintiff paid for said property the sum of $430,000.00, and that it apportioned said purchase price $153,-350.00 to the cost of the land and $276,-650.00 to the cost of the building, and that in computing its taxes for the years in question it employed a period of ten years as and for the remaining useful life of the building; that the Commissioner of Internal Revenue reviewed the returns for the years in question, disallowed the sums reported by plaintiff, and required plaintiff to pay additional

taxes on an allocation of cost employed by the Commissioner that differed substantially from the allocation employed by plaintiff, in that the cost basis employed by the Commissioner and allocable to the building is the sum of $149,330.47, and employed a period of forty years as and for the remaining useful life of the building.

Plaintiff further alleges that, on August 31, 1957, it acquired a parcel of real estate immediately to the north and behind the aforesaid Colton Building, which parcel fronts on Erie Street, and that this real estate, known as the "Dowling Property", comprises a building three stories in height, built in the year 1892, and used for retail stores on the ground floor; that the upper two stories are not now, and since purchased by the plaintiff have not been, occupied; that said building is of brick and wood construction, not fireproofed, and not modernized; that plaintiff paid for said property the sum of $203,077.48, and thereupon allocated $97,416.27 to the cost of the land, and $105,661.21 to the cost of the building; that the remaining useful life of the building is ten years from the date of purchase; that the Commissioner of Internal Revenue reviewed the tax returns in connection with this building and disallowed the same and allocated the sum of $51,220.49 to the cost of the building, and estimated the remaining useful life of the building to be thirty years.

The question presented is whether the Commissioner of Internal Revenue erred in his allocations between land and buildings of the cost of the two parcels of real estate acquired by plaintiff and this, therefore, presents to the Court the problem of allocating the purchase price paid by the taxpayer on the basis of the relative fair market value of the land and buildings at the date of purchase.

The statutes and regulations involved are as follows:

Internal Revenue Code of 1954:

"§ 167. Depreciation.

\*     \*     \*     \*     \*     \*

"(f) *Basis for depreciation.*— The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property." 26 U.S.C. 1958 ed., Sec. 167.

"§ 1011. Adjusted basis for determining gain or loss.

"The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses)), adjusted as provided in section 1016." 26 U.S.C. 1958 ed., Sec. 1011.

"§ 1012. Basis of property— Cost.

"The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). \*   \*" 26 U.S.C. 1958 ed., Sec. 1012.

Treasury Regulations on Income Tax (1954 Code):

"SEC. 1.167(a)–5. *Apportionment of basis.* In the case of the acquisition on or after March 1, 1913, of a combination of depreciable and non-depreciable property for a lump sum, as for example, buildings and land, the basis for depreciation cannot exceed an amount which bears the same proportion to the lump sum as the value of the depreciable property at the time of acquisition bears to the value of the entire property at that time. \*   \*   \*"

The case was tried to the Court on the 3rd day of October, 1961, and stipula-

tions of fact (Plaintiff's Exhibits 5 and 6) were filed during the course of the trial. (Tr. pages 71, 72 and 73). Exhibit 5, paragraphs 6 and 7, read as follows:

"6. That the remaining normal economic useful life of the Colton Building, which is the building located on the property described in paragraph 2 of the complaint, is nineteen (19) years beginning with December 1, 1954.

"7. That the remaining normal economic useful life of the building located on the property described in paragraph 25 of the complaint is ten (10) years from September 1, 1957. (Property called the 'Dowling' premises located at 311–321 Erie Street.)"

It will thus be seen that the second disputed problem, to wit, the remaining normal economic useful life of the two pieces of property involved was compromised and removed from further consideration by agreement of the parties.

At the trial of the case, the plaintiff offered as a witness Fred J. Lauer, an Engineer, who, in 1954, made an inspection of the Colton Building at the behest of the Reuben Realty Company for insurance purposes, and made an estimate of $575,000.00 as the appraised value of the insurable portions of the building. In 1956, he brought this appraisal up-to-date with an estimated sum of $598,-000.00, and, in 1957, he again brought the appraisal up-to-date with an estimated sum of $625,000.00. He reported the building to be in a state of good repair. On cross-examination, he testified that "We are not concerned with the value of the land and we are not concerned with the income of the building".

Plaintiff presented one Preston Daley, a State Agent for the Reliance Insurance Company, who made an appraisal of the Colton Building for insurance purposes on December 3, 1954, and made an estimate of $426,000.00 as being the insurable value of the building. On July 30, 1956, he again appraised the building and estimated the insurable

value in the amount of $464,400.00. He reported the building in good condition, well maintained, and soundly constructed.

Plaintiff then offered one Robert W. Green, who was a Vice President of the Reuben Insurance Agency, who appraised the Colton Building for insurance purposes and estimated the value of the building at $325,000.00 on a depreciated loss basis, and an estimate of $600,000.00, made on July 27, 1956, as being a replacement value.

Howard Dodds, an employee of the Crum and Forrester Insurance Group, then testified that, in 1957, he appraised the Dowling property for insurance purposes on behalf of the Reuben Realty Company, and estimated a replacement cost of $325,000.00 for the building and an actual cash value of $195,000.00.

Donald D. Ferguson then testified that he made an appraisal of the Dowling property on September 10, 1958, for the Crosby Realty Company and estimated a replacement cost figure of $402,127.00 which, after depreciation and exclusions, left a net insurable value of $243,086.00. On cross-examination, he testified that "We are not concerned with fair market value but insurance value".

Plaintiff then offered Claude A. Campbell, a local Realtor and Appraiser of considerable experience, who testified that he made a study of the buildings in question at the behest of plaintiff, and for the purpose of making an allocation of values as between land and buildings on the respective dates of purchase; that, on December 1, 1954, he made his appraisal and allocated the cost of the Colton Building, to wit, $430,000.00, as follows: Building—$279,900.00, Land—$150,600.00 (Rounded figures); that, on September 3, 1957, he made an appraisal of the Dowling building and allocated the purchase price of $203,000.00 as follows: Building—$108,000.00, Land—$95,000.-00.

On cross-examination, Mr. Campbell testified that his allocation of $150,600.00 to the Colton land was equivalent to $13.64 per square foot; that the Home

Building site across the street, and directly to the East of the Colton Building, sold in 1957 for $34.00 per square foot; that the Bowen site across Madison Avenue, and a short distance to the West, sold for $11.12 per square foot, and that the Northwest corner of Ontario and Madison sold for $13.33 per square foot; that the Dowling valuation of land of $95,000.00 estimated by him is $6.27 per square foot, and that the lot back of the Dowling property and to the West thereof sold for $4.84 per square foot, and that the three parcels of land purchased by the Libbey-Owens-Ford Company, approximately one block to the West on Madison Avenue, sold in the early part of 1957 as follows: first lot—$25.00 per square foot, second lot—$22.75 per square foot, third lot—$20.00 per square foot. (This would make an average purchase price of $22.58 per square foot).

The defendant offered Exhibits B, C, D and E, being the tax returns of the plaintiff for the years 1954, 1955, 1956 and 1957, and Exhibit F, being an affidavit of George W. Ritter, bearing date May 16, 1958.

Chester Skelding, Supervisor for the real estate department of the Auditor's Office, then testified that, as of December 1, 1954, the tax valuation of the Colton Building was: Land—$153,350.-00, Building—$81,590.00, for a total of $234,940.00, and that the appraisal was made in 1937; that the assessed and sound value of the Colton real estate in 1955 on an appraisal made in 1951 was: Land—$272,880.00, Building—$178,460,-00, for a total of $451,340.00; that the Erie Street property, to wit, the Dowling property, as of September, 1957, had a sound tax valuation of $191,890.00 for the land and $64,720.00 for the building, for a total of $256,610.00. The 1954 Lucas County valuation of the Colton property is Exhibit 5, paragraph 15, Record page 124.

Glen Ruggles, of Chevy Chase, Maryland, an Engineer and Appraiser in the employ of the Internal Revenue Service for twenty-nine years, made an allocation of cost of the land and buildings in question as follows: Colton, Land—$275,000.00, Building—$155,000.00 for a price per square foot of $25.00. For the Dowling property, he allocated the sum of $151,856.99 to land, and $51,220.49 to building, for a square foot valuation of $10.77.

It, therefore, is the Government's contention that the Colton land should have a fair market value as of the date of purchase, to wit, December 1, 1954, of $25.00 per square foot, and that the Dowling land should have a valuation as of the date of purchase, to wit, August 31, 1957, of $10.77 per square foot.

Considering all the evidence offered in connection with the Dowling property, and going to the question of the allocation of the cost thereof on August 31, 1957, the date of purchase, to the land and the building, we are not disposed to take issue with the Government's allocation of the cost to land and building. Considering the age and the condition of the building, and the fact that it is barely able, if at all, to produce enough revenue to meet expenses, and considering the location of the land fronting Erie Street and directly behind and adjacent to the Colton property, we believe the allocation to be a fair one and, therefore, approve it. We recognize the difficulty of arriving at a fair and accurate market value of a building of this type and in the location in which it is found, taking into consideration the fact that it was built in the year 1892. Comparable sales of land appear to afford a more accurate basis for arriving at a proper allocation.

In arriving at a fair allocation of the cost of the Colton Building between land and building, we are confronted with a somewhat different situation. The tax valuations would lead us to believe that the Government's allocation is fairly accurate. Here again the age of the building constructed in 1904 poses quite a problem in attempting to arrive at a fair market value of the building as distinguished from insurance and tax appraisals made at or about

the time of purchase, to wit, December 1, 1954. The building is in a good state of repair, has four usable floors, and has a substantial year around occupancy. Comparable sales of land within a reasonable time and within the immediate neighborhood afford a good criterion but, at the same time, certain distinguishing factors that enter into the sale and purchase of these comparable parcels must be given close scrutiny. The Home Building site sold in 1957 for $34.00 per square foot but, as pointed out by the witness Mr. Campbell, it is across Erie Street and to the East of the Colton Building in a block where real estate values may be, and undoubtedly are, somewhat higher than those in the block in which the Colton Building is located. Then, again, it must be borne in mind that the purchase of the Home Building site included buildings in being which have since been razed. In addition, the Home Building purchase was made more than two years after the purchase of the Colton property.

The purchase of the three parcels involved in the Libbey-Owens-Ford construction contained buildings at the time of purchase. The decision of the Libbey-Owens-Ford Company to make this improvement seemed to have been known at the time of the purchase of the Colton Building in December of 1954, and because of this knowledge it may be that a higher price was paid per square foot than would ordinarily be required in a normal buyer and seller transaction. As we have heretofore stated, the average price paid for these three parcels was $22.58 per square foot.

We believe that the allocation of $13.64 per square foot for the Colton land as of December 1, 1954, is too low. On the other hand, we believe that the Government's position of an estimate of $25.00 per square foot is too high, and that, therefore, a medium between the two would more nearly approach the fair market value of the Colton land in December of 1954. We, therefore, arrive at a figure of $19.32 per square foot to be allocated to the Colton land.

In view of the fact that the plaintiff is entitled to a redetermination of its taxes on the basis of the adjustment of the remaining useful life of the Colton Building, we suggest that a reallocation of the cost of the Colton land and building be undertaken on the adjusted basis of nineteen years as the remaining normal economic and useful life of the building, and on the basis of a land valuation of $19.32 per square foot.

Findings of fact and conclusions of law may be lodged with the Court by the Government after computation with the plaintiff on the basis suggested within thirty (30) days; plaintiff, within fifteen (15) days thereafter, may file its exceptions or suggested additions if it so desires.